IN THE COMMONWEALTH COURT OF PENNSYLVANIA

The Pennsylvania Turnpike                  :
Commission,                                :
     Petitioner   :
              : No. 174 C.D. 2019
     v.                :
              :
Electronic Transaction Consultants         :
Corporation,                               :
     Respondent   :
              :
Kapsch TrafficCom North America,           :
     Petitioner   :
              : No. 188 C.D. 2019
     v.                :
              : Argued: February 13, 2020
Pennsylvania Turnpike Commission,          :
Electronic Transaction Consultants         :
Corporation,                               :
     Respondents  :


BEFORE: HONORABLE PATRICIA A. McCULLOUGH, Judge
      HONORABLE MICHAEL H. WOJCIK, Judge
      HONORABLE BONNIE BRIGANCE LEADBETTER, Senior Judge


OPINION BY
JUDGE McCULLOUGH         FILED: April 29, 2020

    Kapsch TrafficCom North America (Kapsch) and the Pennsylvania Turnpike Commission (Commission) petition for review, separately,[1] from the January 18, 2019 final determination of the Office of Open Records (OOR), which granted

---

[1] The petitions for review were consolidated by order of this Court on March 13, 2019.

Electronic Transaction Consultants Corporation's (Requester) request for documents pursuant to the Right-to-Know Law (RTKL).[2]

## Facts and Procedural Background

On November 13, 2018, Requester submitted a RTKL request to the Commission seeking the entire proposal submitted by Kapsch in response to the Commission's request for proposals for the "Cashless Tolling System and Maintenance Project." (Reproduced Record (R.R.) at 18a.) On December 6, 2018, following a 30-day extension to respond, the Commission denied the request. In doing so, the Commission asserted, on behalf of Kapsch, and without the benefit of any input from Kapsch, that Kapsch's proposal was exempt from disclosure because it constituted a trade secret and/or confidential proprietary information. (R.R. at 27a-31a.) On December 21, 2018, Requester appealed to the OOR, challenging the denial and stating grounds for why it believed the Kapsch proposal was subject to disclosure under the RTKL.

On December 26, 2018, the OOR emailed Requester and the Commission an official notice of the appeal. The OOR invited both parties to submit evidence and legal argument and informed them that they had until 11:59 p.m. on January 7, 2019, to do so. The notice also stated as follows:

> **Agency Must Notify Third Parties:** If records affect a legal or security interest of an employee of the agency; contain confidential, proprietary or trademarked records of a person or business entity; or are held by a contractor or vendor, **the agency must notify such parties of this appeal immediately and provide proof of that notice by the record closing date set forth above**. Such notice must be made by (1) providing a copy of all documents included with this letter; and (2) advising that interested persons may

---

[2] Act of February 14, 2008, P.L. 6, 65 P.S. §§67.101-67.3104.

2

request to participate in this appeal (*see* [Section 1101(c) of the RTKL,] 65 P.S. §67.1101(c)).

Commonwealth Court has held that "the burden [is] on third-party contractors . . . to prove by a preponderance of the evidence that the [requested] records are exempt." (*Allegheny County* [*Department of Administrative Services*] *v. A Second Chance, Inc.*, 13 A.3d 1025, 1042 (Pa. Cmwlth. 2011)). **Failure of a third-party contractor to participate in an appeal before the OOR may be construed as a waiver of objections regarding release of the requested records.**

(R.R. at 58a) (emphasis in original).

The Commission did not immediately notify Kapsch of the pending appeal before the OOR or provide copies of the documents included in the OOR's letter as instructed. However, on January 2, 2019, the Commission sent a vague email to Kapsch stating that it had received a RTKL request from Requester for a copy of the Kapsch proposal and that the proposal identified all of its pages as either confidential proprietary information or a trade secret. (R.R. at 134a.) The Commission noted that it had sent redacted information to Requester, that Requester had appealed, and that there was a possibility that the Commission could be ordered to produce unredacted copies of Kapsch's proposal. However, the Commission advised that it would send Kapsch a "participation notice" as soon as it received one from the "Office of Administration." *Id.* The Commission's email did not mention the OOR or explain that the OOR is tasked with hearing RTKL appeals. Moreover, even though the Commission had received a notice of appeal on December 26, 2018, it did not forward a copy of the notice of appeal to Kapsch with the email, but instead, the Commission informed Kapsch that it would send a "participation notice" when it received one.

Subsequently, at 8:29 a.m. on January 9, 2019, the OOR emailed the Commission informing it that the record in the appeal had closed on January 7, 2019,

3

but that the OOR had not received a submission from the Commission. (R.R. at 63a.) The OOR asked the Commission to provide a submission by 5:00 p.m. on Thursday, January 10, 2019. *Id.*

Thereafter, at 10:40 a.m. on January 9, 2019, the Commission emailed a Kapsch employee, Chris Body, the December 26, 2018 appeal notice from the OOR. (R.R. at 68a.) The Commission's email stated the following: "[u]nfortunately the attached document was emailed to our Open Records Officer while she was on extended leave and we did not realize this document had been sent. Our Open Records Officer did send an 'Out of Office Assistant' message but we did not receive a follow-up message from OOR." *Id.* The Commission also informed Kapsch, for the first time, about the proceedings before the OOR, that the record before the OOR had closed on January 7, 2019, and instructed that, due to the lack of a submission from the Commission, the OOR had extended the deadline to provide a submission until 5:00 p.m. on Thursday, January 10, 2019. *Id.* Finally, the Commission advised Kapsch that "[s]ince the records requested [were] not [Commission] records, the [Commission was] not able to file any documents setting forth the steps taken to keep the proposal information proprietary and confidential" and that the Commission planned to "file a document making a statement to that effect." (R.R. at 69a.) Approximately 30 minutes later at 11:14 a.m., Body forwarded the email from the Commission to four of his Kapsch colleagues and added, "[w]e have until tomorrow at 5PM to respond with documentation backing up our claims. If we do not, [Requester] will get our entire proposal. I am on a flight all afternoon." (R.R. at 68a.)

The next day, January 10, 2019, at 9:39 a.m., Kapsch employee Janet Eichers emailed the OOR requesting a one-week extension, *i.e.*, until the close-of-business on January 17, 2019, to respond to Requester's appeal. (R.R. at 65a.) Eichers informed the OOR that Kapsch had received notification of the appeal less than 24

4

hours prior, that its proposal was technical and complex, and that it wished to submit a response that was as thorough as possible. *Id.*

In response, the OOR informed Eichers that it could not rule on Kapsch's request because it had not yet received and ruled upon a request to participate from Kapsch. (R.R. at 67a.) The OOR instructed Eichers to submit a request to participate to the OOR, Requester, and the Commission and to submit evidence of the date when Kapsch was notified of the appeal. *Id.* The OOR also advised that its final determination was due January 22, but that if Requester consented to extending the deadline, the OOR would reconsider a revised timeline. *Id.* Subsequently, at 11:12 a.m. the same day, Kapsch emailed the OOR and Requester a completed "request to participate" form, as well as the January 9, 2019 email from the Commission advising Kapsch of the appeal. *Id.* Kapsch also asked the OOR for more time to submit its response and legal argument. *Id.*

Several minutes later, at 11:27 a.m., the OOR granted, by email, Kapsch's request to participate, but instructed Kapsch to obtain Requester's consent to extend the final determination deadline. (R.R. at 74a.) At 11:45 a.m., counsel for Requester advised in an email that she did not consent to extend the final determination deadline. *Id.* At 12:40 p.m. on January 10, 2019, the OOR sent an email to the parties stating that because Requester had "not consented to an extension of the time period for the issuance of the final determination, [it was] unable to extend the submission period to January 17, 2019." (R.R. at 76a.) However, the OOR agreed to extend the submission period one day, until 5:00 p.m. on January 11, 2019. The OOR advised that it would not accept submissions after that time. *Id.*

The following day, January 11, 2019, at 3:14 p.m., Kapsch submitted a letter in response to Requester's appeal. Kapsch stated that all of its confidential/trade secret materials, including its proposal, are kept under lock and key and that all Kapsch employees must enter into individual agreements upon hire to maintain any such

5

materials in strict confidence. (R.R. at 87a.) Kapsch also attested that it provides training to employees on the treatment and protection of confidential documents. *Id.* Kapsch further stated that Requester has been a direct competitor on many toll projects over the past 10 years and that "[d]isclosure of Kapsch detailed pricing and business information . . . [would] have significant and irreparable comparable harm to [Kapsch's] business by allowing a direct competitor to revise its own pricing and undercut or otherwise undermine Kapsch in its pursuit of similar business opportunities." *Id.* Kapsch also stated that it would appreciate the opportunity to provide further responses in the matter. (R.R. at 88a.)

Kapsch's letter included a sworn verification by Kapsch's Senior Vice President, Sales and Development, and an exemption log. The exemption log stated that the information sought is not generally known to the public and that "Kapsch derives independent economic value from [its] secrecy, and has consequently made consistent efforts to maintain it through internal facilities and information security processes and strictly controlled external releases." (R.R. at 91a.) Additionally, the log noted that direct competitors, such as Requester, would "obtain economic value" from the disclosure of the information. *Id.* Kapsch, however, identified several sections within the proposal that it was willing to disclose.

The Commission also submitted a position statement to the OOR. The Commission contended that it was not required to independently assess and evaluate the requested information and determine whether it constituted a trade secret for purposes of exemption from disclosure. (R.R. at 78a.) Although it alleged the requested records were not Commission records, the Commission noted that Kapsch marked its proposal as a trade secret and confidential proprietary information. Therefore, the Commission argued it exercised proper discretion when it determined that Kapsch's proposal was exempt from disclosure. (R.R. at 79a.)

6

Thereafter, the OOR issued a final determination on January 18, 2019. In its final determination, the OOR first concluded that because the Kapsch proposal had been received by the Commission, it was considered a record of the Commission under the RTKL. (OOR final determination at 5.) Citing our decision in *Office of the Governor v. Bari*, 20 A.3d 634 (Pa. Cmwlth. 2011), the OOR concluded that a trade secret is information that (1) derives independent economic value; and (2) is the subject of reasonable efforts to maintain its secrecy. (OOR final determination at 6.) The OOR also recognized that under the RTKL, "confidential proprietary information" is defined as information that is "privileged or confidential" and the disclosure of which would cause substantial harm to the competitive position of the person that submitted the information. *Id.* at 5. The OOR concluded that Kapsch demonstrated that it had taken reasonable measures to keep some of the proposal contents confidential and secure, "including limiting dissemination to employees and entering into agreements to permit Kapsch to contest public record requests." *Id.* at 7. However, the OOR held that "Kapsch's position statement [was] not sufficient to show that disclosure of all sections of the [p]roposal would cause competitive harm or that the [p]roposal possesses independent economic value." *Id.* at 8. The OOR noted that generic or conclusory statements are insufficient to justify the exemption of public records and that the evidence must be specific enough to permit the factfinder to ascertain how disclosure of the requested information would implicate the proffered exemptions. *Id.*

The OOR concluded that, although Kapsch's exemption log designated certain sections of the proposal a trade secret or confidential proprietary information, Kapsch also identified large portions of the proposal that could be disclosed, but "did not provide a redacted version of the [p]roposal." *Id.* The OOR concluded that "in conceding that portions [were] not exempt, Kapsch [had] not shown that the [p]roposal [could be] withheld in its entirety." *Id.* The OOR recognized that, although the exemption log gave "a brief rationale for each" exemption, "[t]he rationale for each

7

designation largely mirror[ed] the exemptions, while the position statement fail[ed] to fully address how disclosure would cause competitive harm or how the [p]roposal possessed independent economic value." *Id.* at 9. As an example, the OOR noted that Kapsch identified a "client list" as confidential proprietary information and that, although the RTKL defines "trade secret" to include customer lists that derive independent economic value, Kapsch had neither identified its client list "as a trade secret nor addressed how this list possesse[d] independent economic value." *Id.*

The OOR noted that in previous cases where it held customer and pricing information was exempt from disclosure, "the third parties provided detailed explanations as to how the disclosure of information would substantially harm them in the competitive marketplace." *Id*. at 10. However, in the instant matter, the OOR concluded that Kapsch had not "provided detailed and specific explanations for how the information possesse[d] independent economic value or how disclosure would provide a competitive advantage to another entity." *Id.* Instead, the OOR determined that Kapsch merely relied upon "conclusory statements that parrot[ed] the tests to justify exemption." *Id.* Because it concluded that Kapsch had not provided sufficient evidence to carry its burden of proof, the OOR granted Requester's appeal and ordered the Commission to provide an unredacted copy of Kapsch's proposal within 30 days. *Id.* at 10-11.

On February 1, 2019, Kapsch's newly retained counsel filed a petition for reconsideration with the OOR. Kapsch's counsel argued that the final determination violated her client's due process rights because her client had no knowledge that the November 13, 2018 RTKL request was filed with the Commission, had no knowledge that the December 21, 2018 appeal was filed with the OOR, and was not given actual notice of the appeal until January 9, 2019, which was two days after the OOR submission deadline had already expired. (R.R. at 132a.) Kapsch's counsel argued that Kapsch was kept in the dark for nearly 60 days before Kapsch learned that its

8

proposal was being sought by a direct competitor and was given less than one day to assert an exemption and defend its records from disclosure. *Id.* She also contended that without adequate notice and time to prepare its submission, Kapsch was unable to meaningfully defend against the release of its records and/or provide the necessary details to make its case. (R.R. at 133a.) In addition, Kapsch's counsel sought clarification of the final determination and argued that portions of the material sought by Requester were protected from disclosure under the RTKL. *Id.*

On February 13, 2019, the OOR denied the petition for reconsideration. The OOR determined that the petition alleged "evidence that was not before the OOR during the appeal" and that the OOR was not permitted to accept new evidence on reconsideration. (R.R. at 145a.) The OOR also concluded that "a review of the final determination indicate[d] that the final determination consistently held that [Kapsch] failed to meet its burden of proof." *Id.* Thereafter, Kapsch and the Commission filed their petitions for review.

## Discussion

On appeal,[3] Kapsch raises the following issues: (1) the matter should be remanded to the OOR to provide Kapsch an opportunity to be heard; (2) the OOR erred in denying Kapsch's petition for reconsideration; and (3) the information that the OOR ordered to be disclosed under the RTKL is either a trade secret or confidential proprietary information and, thus, exempt from disclosure. Kapsch further contends that Requester's position in contesting this appeal is frivolous such that Kapsch is entitled to attorney's fees and costs. Like Kapsch, the Commission argues that it properly withheld Kapsch's unredacted proposal because it contained trade secrets and

---

[3] Our standard of review of a final determination issued by the OOR is *de novo* and our scope of review is plenary. *Bowling v. Office of Open Records*, 75 A.3d 453, 477 (Pa. 2013).

confidential proprietary information, which exempts it from disclosure under the RTKL.

We first address whether the matter should be remanded to the OOR to give Kapsch an opportunity to be heard. Kapsch argues that it is well-established that an agency may not waive a third party's interest in protecting records that are in the agency's possession. Kapsch contends that where a third party's information is subject to disclosure in an OOR appeal and the third party has not been notified of the appeal, the matter should be remanded in order for the third party to have notice and an opportunity to defend against the disclosure. Kapsch alleges that it first learned of Requester's OOR appeal and/or that its records were being reviewed for disclosure on January 9, 2019. Kapsch asserts that although the Commission had more than two months to consider the request and appeal, Kapsch was given less than two days, *i.e.*, until January 11, 2019, to apprise itself of the hundreds of records at issue; retain counsel; review the request and the grounds for exemption from disclosure; form a rebuttal argument; interview key persons; and submit argument with supporting documentation to the OOR. Because two days was insufficient notice, and failed to provide it with a meaningful opportunity to respond, Kapsch argues that its due process rights were violated and that we should vacate and remand this matter so that it can have an opportunity to meaningfully defend its confidential records.[4]

Section 305 of the RTKL provides that records in the possession of a Commonwealth agency are presumed "public" unless they are (1) exempted by section 708 of the RTKL; (2) protected by a privilege; or (3) exempted "under any other Federal or State law or regulation or judicial order or decree." 65 P.S. §67.305.[5] The

---

[4] Requester did not respond to Kapsch's due process arguments.

[5] As pertains to the instant matter, section 708(b)(11) of the RTKL exempts from disclosure "[a] record that constitutes or reveals a trade secret or confidential proprietary information." 65 P.S.

10

party asserting that a record is exempted from disclosure "bears the burden of proving the exemption applies." *Highmark Inc. v. Voltz*, 163 A.3d 485, 490 (Pa. Cmwlth. 2017).

It is well-established that a third party has an interest in protecting its records in an agency's possession and that such interest may not be waived by the agency. *Id.* While "neither the requester, the agency, nor [the] OOR have a duty under the RTKL to provide notice to a third party whose interests may be implicated by a RTKL request[,]" we have "consistently recognized the serious due process concerns implicated by this lack of notice, particularly where the confidential information of a private entity is at stake." *Department of Corrections v. Maulsby*, 121 A.3d 585, 590 (Pa. Cmwlth. 2015) (citing *Bari*, 20 A.3d at 648); *see also Bagwell v. Pennsylvania Department of Education*, 76 A.3d 81, 91 (Pa. Cmwlth. 2013) (recognizing "the necessity of protecting rights of third parties because the RTKL lacks a mechanism for

---

§67.708(b)(11). Section 102 of the RTKL defines "Confidential proprietary information" as follows: "Commercial or financial information received by an agency: (1) which is privileged or confidential; and (2) the disclosure of which would cause substantial harm to the competitive position of the person that submitted the information." 65 P.S. §67.102. Section 102 further defines a "Trade secret," in pertinent part, as follows:

> Information, including a formula, drawing, pattern, compilation, including a customer list, program, device, method, technique or process that:
>
> (1) derives independent economic value, actual or potential, from not being generally known to and not being readily ascertainable by proper means by other persons who can obtain economic value from its disclosure or use; and
>
> (2) is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

*Id.*

11

providing notice and ensuring full participation"). Accordingly, we construe the RTKL to "afford due process to third parties, including the ability to submit evidence and assert exemptions at the appeals officer level." *Highmark*, 163 A.3d at 490.

When a RTKL request seeks confidential proprietary information that a third party submitted to an agency, the third party has a right to due process before the information is disclosed. *Id.* While due process in the RTKL context does not entitle a third party to the right to a hearing, "[t]he essential elements for due process before an OOR appeals officer are notice and an opportunity to be heard." *Id.*; *see also City of Harrisburg v. Prince*, 219 A.3d 602, 619 (Pa. 2019) (holding that under the RTKL, third parties must be afforded notice and an opportunity to be heard). Where a third party asserts that the requested information contains "confidential proprietary information" under the RTKL, the OOR must take all necessary precautions, such as conducting *in camera* review, before providing access to the information. *Maulsby*, 121 A.3d at 590; *Bari*, 20 A.3d at 648. In instances where the OOR fails to provide a third party whose record is sought with notice and/or a meaningful opportunity to be heard, the appropriate remedy is to vacate the OOR's final determination and remand to the OOR so that the third party can be given an opportunity to challenge the disclosure of the requested records. *See*, *e.g.*, *PharmaCann Penn LLC v. Ullery* (Pa. Cmwlth., Nos. 172-174, 183-184 C.D. 2018, filed October 16, 2019), slip op. at 30-31 (vacating final determination and remanding to the OOR where the OOR failed to afford a third party an adequate time to respond to issues raised in appeal);[6] *Pennsylvania Department of Conservation and Natural Resources v. Vitali* (Pa. Cmwlth., No. 1013 C.D. 2014, filed July 7, 2015), slip op. at 18-19 (vacating final determination and remanding to the OOR where a third party was not notified of the

---

[6] Pursuant to this Court's Internal Operating Procedures, an unreported opinion of the Court filed after January 15, 2008, may be cited for its persuasive value. 210 Pa. Code §69.414(a).

12

request so that the third party could be given an opportunity to submit evidence concerning the exemption of records); *Maulsby*, 121 A.3d at 593 (vacating final determination and remanding to the OOR where the Department of Corrections failed to notify a third party).

While the RTKL does not provide a mechanism for third party participation in every instance where a third party's interest is implicated in a request, the RTKL specifically requires agencies to notify third parties where requests seek trade secrets. Section 707(b) of the RTKL, titled "Requests for trade secrets," provides as follows:

> An agency *shall notify a third party of a request for a record* if the third party provided the record and included a written statement signed by a representative of the third party that the record contains a trade secret or confidential proprietary information. *Notification shall be provided within five business days of receipt of the request for the record.* The third party shall have five business days from receipt of notification from the agency to provide input on the release of the record. The agency shall deny the request for the record or release the record within ten business days of the provision of notice to the third party and shall notify the third party of the decision.

65 P.S. §67.707(b) (emphasis added).

Additionally, while the RTKL does not require *the OOR* to notify third parties that have direct interests in appeals, section 1101(c)(1) of the RTKL envisions third-party involvement by providing as follows:

> A person other than the agency or requester with a direct interest in the record subject to an appeal under this section may, within 15 days following receipt of actual knowledge of the appeal but no later than the date the appeals officer issues an order, file a written request to provide information or to appear before the appeals

13

officer or to file information in support of the requester's
or agency's position.

65 P.S. §67.1101(c)(1).

In *PharmaCann*, although the OOR directed the Department of Health (DOH) to notify the third-party authors of confidential records of their right to participate in an OOR appeal within seven days of receipt of the notice of appeal, DOH failed to notify one of the third parties, Bay LLC (Bay), until nearly four months later. *Id.*, slip op. at 8, 10. Once Bay had received notice, it filed a request to participate. The OOR granted Bay's request, but gave Bay only one week to submit any additional evidence. *Id.*, slip op. at 11. Ultimately, the OOR concluded that Bay's submissions were insufficient to prove the applicability of several exemptions under the RTKL. *Id.*, slip op. at 15.

In both a petition for reconsideration filed with the OOR and in its appeal before this Court, Bay argued that DOH's failure to notify it about the appeal and the OOR's decision to only grant Bay seven days to submit any evidence in response to the appeal violated Bay's due process rights, as well as section 1101(c) of the RTKL, which grants a direct-interest participant 15 days to submit any evidence. *Id.*, slip op. at 22. We concluded that Bay "did not have a meaningful opportunity to be heard before the initial fact-finder." *Id.*, slip op. at 30. In particular, we observed that DOH's failure to notify Bay, as directed by the OOR, prevented Bay from participating in the proceedings for over four months. We held that after Bay finally learned of the appeal, the "OOR failed to afford Bay the statutorily required period of time to adequately respond to the issues raised," which constituted a "manifest due process violation." *Id.* Accordingly, we vacated the final determination and remanded to the OOR to consider the merits of Bay's challenge to the request. *Id.*

Here, we conclude that Kapsch was not afforded sufficient due process with respect to the request for its records. When the Commission originally received Requester's RTKL request on November 13, 2018, the Commission did not notify Kapsch. After the Commission received notice of Requester's appeal to the OOR on December 26, 2018, the Commission initially sent Kapsch a vague email on January 2, 2019, that obliquely referenced Requester's request and appeal. However, this email did not include a copy of the actual request; did not include a copy of the notice of appeal, as instructed by the OOR and required under section 1101(c); neither mentioned the OOR nor the OOR's submission deadlines for the appeal; and informed Kapsch that the Commission would send a copy of the notice of appeal as soon as the Commission received one, even though the Commission had already received an official notice of appeal a week prior. Due to these deficiencies, we conclude the January 2, 2019 email constituted inadequate notice and failed to satisfy basic due process requirements.[7]

Even though the Commission first received a notice of appeal from the OOR on December 26, 2018, the Commission did not send a copy of the official notice to Kapsch until the morning of January 9, 2019, which was two days after the record had technically closed. Pursuant to its instruction from the OOR, the Commission informed Kapsch that it had until close-of-business on January 10, 2019, to respond to Requester's appeal. Kapsch then contacted the OOR to ask for a one-week extension to respond to the appeal, but was only given one additional day, or until the close-of-business on January 11, 2019, to provide its response. Kapsch submitted a response to Requester's appeal on January 11, 2019, at 3:14 p.m.

---

[7] Requester also does not argue that the January 2, 2019 email was sufficient to satisfy basic due process requirements.

15

Kapsch was provided only two days to review the request, retain counsel, sort through the hundreds of records at issue, and provide a response to Requester. Because two days was an insufficient amount of time for Kapsch to respond to Requester's appeal, Kapsch was neither provided adequate notice nor a meaningful opportunity to be heard, which are the essential due process prerequisites for third parties that have records implicated by RTKL requests. *See Highmark*, 163 A.3d at 490.

Furthermore, Kapsch's mere 2-day period for responding to Requester's appeal contravened both section 707(b) of the RTKL, 65 P.S. §67.707(b), which mandates that agencies notify third parties of requests for trade secrets within *5 days of the request*, and section 1101(c)(1) of the RTKL, which provides third parties 15 days to respond to a RTKL appeal. *See PharmaCann*, slip op. at 30 (concluding that section 1101(c)(1) provides third parties a 15-day period to respond to issues raised in RTKL appeals). Here, Kapsch did not learn of the request until more than a month-and-a-half after the Commission received it. More importantly, however, Kapsch was only given 2 days to provide a response to Requester's appeal, instead of the statutorily imposed 15-day period. Like *PharmaCann*, where the third party was given one week to respond to a RTKL request and we concluded that the OOR had violated section 1101(c) of the RTKL and that its actions constituted a manifest due process violation, here the OOR similarly violated Kapsch's due process rights by providing it only two days to respond to Requester's appeal.

We next address whether the OOR erred in denying Kapsch's petition for reconsideration. Kapsch contends that its petition was based upon one argument, *i.e.*, that it was not given notice that its documents were at risk of disclosure after the RTKL request was made to the Commission, or during the

16

pendency of the appeal to the OOR. Kapsch alleges that the OOR was aware that Kapsch had not received adequate notice based on the email Kapsch sent to the OOR on January 9, 2019, informing the OOR that it had just received notice of the appeal and requesting an extension to submit its response. Further, while the OOR stated in its order denying the petition that Kapsch's petition was based on evidence that was not before the OOR during the appeal, Kapsch asserts this is untrue given that the OOR was well aware that Kapsch had requested additional time to respond to the appeal. Kapsch argues that granting its petition for reconsideration and permitting Kapsch a reasonable opportunity to prepare a response would have been the simplest method for correcting the OOR's due process error.

The OOR has not promulgated any regulations regarding petitions for reconsideration. In general, however, an agency's "decision to grant or deny a request for reconsideration is a matter of administrative discretion and, as such, will only be reversed for an abuse of discretion." *Fleeher v. Department of Transportation, Bureau of Driver Licensing*, 850 A.2d 34, 36 (Pa. Cmwlth. 2004); *Muehleisen v. State Civil Service Commission*, 443 A.2d 867, 869 (Pa. Cmwlth. 1982). An abuse of discretion in the denial of reconsideration of an administrative agency decision "occurs only where the challenger establishes that the order is manifestly unreasonable or is based upon bad faith, fraud, capricious action, or an abuse of power." *C.R.-F. v. Department of Human Services*, 153 A.3d 438, 443 (Pa. Cmwlth. 2017); *see also Fatool v. State Civil Service Commission (Danville State Hospital)*, 14 A.3d 919, 921 (Pa. Cmwlth. 2011) (holding that "[we] will not review the actions of an administrative tribunal involving acts of discretion absent bad faith, fraud, capricious action[,] or abuse of power"). Moreover, "an abuse of discretion is more than an error of judgment" and does not occur "merely

17

when the [lower tribunal] reaches a decision contrary to the decision that the appellate court would have reached." *Payne v. Workers' Compensation Appeal Board (Elwyn, Inc.)*, 928 A.2d 377, 379 (Pa. Cmwlth. 2007). Instead, "an abuse of discretion occurs when the course pursued represents not merely an error of judgment, but where the judgment is manifestly unreasonable or where the law is not applied or where the record shows that the action is a result of partiality, prejudice, bias or ill will." *B.B. v. Department of Public Welfare*, 118 A.3d 482, 485 (Pa. Cmwlth. 2015) (internal quotation marks omitted); *Payne*, 928 A.2d at 379 (internal quotation marks omitted).

Here, we conclude that the OOR abused its discretion in denying Kapsch's petition for reconsideration. Kapsch's petition for reconsideration was based on its allegation that its due process rights were violated by having an insufficient amount of time to respond to Requester's appeal. Accordingly, Kapsch sought an opportunity to meaningfully defend against the release of its corporate records.

Given that Kapsch was provided with only two days to respond to Requester's appeal due to the Commission's late notification, the OOR's denial of the petition for reconsideration was, indeed, "manifestly unreasonable" and a "capricious action."[8] *See C.R.-F.*, 153 A.3d at 443. More specifically, because the OOR violated Kapsch's due process rights by failing to provide it a meaningful opportunity to be heard, the OOR's decision to deny the petition for reconsideration both misapplied the law, *see B.B.*, 118 A.3d at 485, and was "contrary to the . . . established rules of law," *Capricious*, Black's Law Dictionary

---

[8] With respect to "decrees," capricious is defined as "contrary to the evidence or established rules of law." *Capricious*, Black's Law Dictionary (11th ed. 2019).

18

(11th ed. 2019). Consequently, the OOR abused its discretion in denying the petition for reconsideration.[9]

We next address whether Requester's position in contesting the appeal is frivolous such that Kapsch is entitled to attorney's fees and costs under Rule 2744 of the Pennsylvania Rules of Appellate Procedure, Pa.R.A.P. 2744. Kapsch argues that because Requester does not challenge Kapsch's version of the facts, as it relates to due process, Requester's legal position lacks a basis in law or fact and, therefore, is frivolous. Kapsch also observes that the OOR lacked the authority to extend the deadline for issuing its final determination without the agreement of Requester.

---

[9] Recently in *Prince*, our Supreme Court "expressed [its] 'concerns regarding the disjointed and scant procedural protections at both the request and appeal stages' with regard to third party notice and opportunity to be heard." 219 A.3d at 619 n.22 (quoting *Pennsylvania State Education Association v. Department of Community and Economic Development*, 148 A.3d 142, 159-60 (Pa. 2016) (*PSEA II*)). The Court also noted that its concerns were not new, as it had repeatedly alerted the OOR that the RTKL "lacked adequate administrative and judicial processes for ensuring that third parties can 'seek redress for action that they believe violates the statutory scheme and/or their constitutional rights.'" *Prince*, 219 A.3d at 619 n.22 (quoting *Pennsylvania State Education Association ex rel. Wilson v. Department of Community and Economic Development*, 50 A.3d 1263, 1276 (Pa. 2012) (*PSEA I*)). The Court further observed that despite its "repeated alerts to these due process deficiencies[,]" the OOR had not "implemented improved procedural protections for individuals whose personal information may be subject to disclosure." *Prince*, 219 A.3d at 619 n.22.

Likewise, in *PSEA II*, our Supreme Court admonished the OOR for its "repeated failure to promulgate adequate regulations to address the almost complete lack of procedural due process for individuals whose personal information is subject to disclosure under the RTKL." 148 A.3d at 158. The Court recognized that although the OOR had the authority to promulgate regulations in order to "provide the essential procedural due process" protections for RTKL requests and appeals, the OOR had not adopted any regulations. *Id.* at 159-60.

Similarly, here, we conclude that the lack of procedural due process afforded to third-party Kapsch during the request, appeal, and petition for reconsideration stages could likely have been avoided had the OOR followed our Supreme Court's instructions to "promulgate adequate regulations to address the . . . lack of due process for [entities] whose personal information is subject to disclosure under the RTKL." *Id.* at 158.

19

Kapsch asserts that it was Requester's "unwillingness to grant an extension of time at the OOR which short-circuited the OOR's ability to provide Kapsch[] more than 48 hours to review thousands of legal documents and prepare a response." (Kapsch's Reply Br. at 7.) Because it alleges that Requester's position is frivolous and completely at odds with Commonwealth Court cases that have allowed a remand where third parties did not receive notice, Kapsch urges us to award it attorney's fees, reasonable costs, and sanctions.

Rule 2744 of the Rules of Appellate Procedure provides, in relevant part, the following:

> In addition to other costs allowable by general rule or Act of Assembly, an appellate court may award as further costs damages as may be just, including [] a reasonable counsel fee . . . if it determines that an appeal is frivolous[10] or taken solely for delay or that the conduct of the participant against whom costs are to be imposed is dilatory,[11] obdurate,[12] or vexatious.[13]

Pa.R.A.P. 2744. While Rule 2744 permits this Court to award attorney's fees against the *petitioner* where the *appeal* is frivolous, in instances, such as here, where attorney's

---

[10] "Frivolous," in the context of legal proceedings, means "[l]acking a legal basis or legal merit; manifestly insufficient as a matter of law." *Frivolous*, BLACK'S LAW DICTIONARY (11th ed. 2019); *see also Pennsylvania Department of Transportation v. Workmen's Compensation Appeal Board (Tanner),* 654 A.2d 3, 5 (Pa. Cmwlth. 1994) (concluding that for the purposes of Rule 2744, "[a] frivolous appeal is one lacking any basis in law or fact").

[11] The definition of "dilatory" is "[d]esigned or tending to cause delay." *Dilatory*, BLACK'S LAW DICTIONARY (11th ed. 2019).

[12] "Obdurate" means "stubbornly resistant in wrongdoing," "resistant to persuasion or softening influences," "inflexible," or "unyielding." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 1555 (Gove, ed. 1986).

[13] "Vexatious" is defined as "without reasonable or probable cause or excuse; harassing; annoying." *Vexatious*, BLACK'S LAW DICTIONARY (11th ed. 2019).

fees are sought from the *respondent*, fees may only be awarded where the respondent's conduct is dilatory, obdurate, or vexatious. *See id.*; *see also McCann v. Unemployment Compensation Board of Review*, 756 A.2d 1, 5 (Pa. 2000) (holding that under Rule 2744, attorney's fees may only be awarded against a respondent where its conduct during the appellate process was dilatory, obdurate, or vexatious). Pursuant to Rule 2744, "an appellate court has no power to award counsel fees for matters pertaining to the conduct *in the proceedings below* but may only award them for frivolous appeals or dilatory, obdurate, or vexatious conduct of a party *on appeal*." *Presbyterian Medical Center of Oakmont v. Department of Public Welfare*, 792 A.2d 23, 29, (Pa. Cmwlth. 2002) (emphasis added); *see also Township of South Strabane v. Piecknick*, 686 A.2d 1297, 1300 & n.4 (Pa. 1996).

Here, Kapsch seeks attorney's fees from Requester, the respondent; accordingly, we may only award attorney's fees if we determine that Requester's conduct has been dilatory, obdurate, or vexatious. Kapsch argues that it is entitled to attorney's fees because Requester did not respond to Kapsch's due process argument in its brief. However, a petitioner is not entitled to attorney's fees under Rule 2744 merely because the respondent—the party without the burden in the appeal—fails to respond to one of the petitioner's arguments. Kapsch has not provided any evidence that Requester's conduct, *on appeal*, was otherwise dilatory, obdurate, or vexatious.[14] Accordingly, because Kapsch has not demonstrated that it is entitled to attorney's fees under Rule 2744, we deny Kapsch's request.

---

[14] Kapsch argues that it was Requester's failure to consent to an extension for allowing Kapsch to respond to the RTKL appeal that resulted in the OOR only permitting Kapsch two days to provide a response. Although Requester's refusal to consent to an extension could, perhaps, be perceived as obdurate, it did not occur on appeal to this Court; thus, it does not provide a basis for awarding attorney's fees under Rule 2744 of the Pennsylvania Rules of Appellate Procedure.

**Conclusion**

Because Kapsch was provided an insufficient amount of time to respond to Requester's appeal, its due process rights were violated; therefore, the OOR erred in granting Requester's appeal without allowing Kapsch additional time to respond to the appeal and in denying Kapsch's petition for reconsideration. As a result, we vacate the OOR's final determination.[15] Because Kapsch did not meet its burden of demonstrating that it is entitled to attorney's fees, we deny its request for the same. We remand the matter to the OOR to allow Kapsch an opportunity to be meaningfully heard, *i.e.*, an opportunity to submit to the OOR, within 15 days of our decision,[16] additional evidence in support of its position that its records are exempt from disclosure under section 708(b)(11) of the RTKL, 65 P.S. §67.708(b)(11), and for the OOR to issue a new final determination based on Kapsch's new submission.[17]

_____
PATRICIA A. McCULLOUGH, Judge

Judge Fizzano Cannon did not participate in this decision.

---

[15] Because we conclude that the OOR violated Kapsch's due process rights by not providing Kapsch adequate time to respond to Requester's appeal, it is unnecessary for us to decide if the information submitted by Kapsch on January 11, 2019, prior to it obtaining counsel, established that Kapsch's records were exempt from disclosure as either "trade secrets" or "confidential proprietary information."

[16] *See, e.g.*, *Vitali*, slip op. at 16 & order (vacating final determination and, based on section 1101(c)(1) of the RTKL, remanding to the OOR to allow a third party 15 days to submit evidence in support of its position that the records were exempt from disclosure).

[17] As always, in disposing of Requester's appeal, it is within the OOR's discretion regarding the necessity of conducting a hearing or *in camera* review. Sections 1101(b)(3) and 1102(a)(2) of the RTKL, 65 P.S. §§67.1101(b)(3), 67.1102(a)(2); *Township of Worcester v. Office of Open Records*, 129 A.3d 44, 59-60 (Pa. Cmwlth. 2016).

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

The Pennsylvania Turnpike
Commission,
                Petitioner

        v.

Electronic Transaction Consultants
Corporation,
                Respondent

Kapsch TrafficCom North America,
                Petitioner

        v.

Pennsylvania Turnpike Commission,
Electronic Transaction Consultants
Corporation,
                Respondents

:
:
:
:
:  No. 174 C.D. 2019
:
:
:
:
:
:
:
:
:
:  No. 188 C.D. 2019
:
:
:
:
:
:
:

## ***ORDER***

AND NOW, this 29th day of April, 2020, the January 18, 2019 final determination of the Office of Open Records (OOR) is vacated. The matter is remanded to the OOR for proceedings consistent with the foregoing opinion.

Jurisdiction relinquished.

_____
PATRICIA A. McCULLOUGH, Judge